IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL NO. 6:20CR60033-001 |
| ) | |
| AARON EDWARD BRIGGS ) | |

**SENTENCING MEMORANDUM**

Comes now Aaron Briggs, by and through his attorney, Ben Hooten and states:

A Presentence Report was prepared in this case with the final report dated June 17, 2021. (ECF No. 28.) This Memorandum will address issues that need to be resolved and/or reviewed at the Sentencing Hearing.

**PROCEDURAL HISTORY**

Aaron Briggs is 28-year-old male. He was named in a three-count indictment filed on October 7, 2020 in the Western District of Arkansas, Hot Springs Division. On October 28, 2020 Briggs appeared via video conference before United States Magistrate Judge Barry A. Bryant. He was advised of his rights, charges against him, the maximum penalties, Briggs waived his right to a detention hearing but reserved the rights, and an attorney, Ben Hooten, was appointed to represent him. Trial was set for December 3, 2020. Subsequently, a motion to continue was granted and trial was reset for May 3, 2021. On March 19, 2021, the jury trial was cancelled, and a change of plea hearing was set for March 22, 2021. Briggs entered into a plea agreement with the government. On March 22, 2021, Briggs appeared by video conference before the Honorable Susan Hickey and pleaded guilty to Count Two of the Indictment: Production of an Image of a Minor Engaged in Sexually Explicit Conduct, 18 U.S.C. § § 2251(a) and (e). The Plea Agreement (ECF 24) stated that the Government would move to dismiss Counts One and Three of the

1

Indictment, once sentence had been pronounced by the Court. A Presentence Report was ordered, the initial report was dated May 21, 2021. No objections were voiced by either the Defendant or the Government. The final PSR is dated June 17, 2021.

**The Report found Briggs to have an Offense level of 40 and Criminal History Category of III with Guideline Range of 360 months to life. However, in Brigg's case the statutory authorized maximum sentence of 30 years is less than the maximum of the guideline range; therefore, the guideline range is 360 months.**

### 1. <u>Guidelines must be properly calculated</u>

In a recent U.S. Supreme Court case of *Rosales-Mireles v. United States*138 S.Ct. 1897 201 L.Ed.2d 376 (2018), the Court held that is the responsibility of the district courts to determine if the Guidelines are properly calculated. It is a procedural error if they are not and prejudicial to the defendant. Due diligence requires that all possible errors in the guideline range should be addressed so as not to create a procedural error that would be prejudicial to the defendant, as required by *Rosales-Mireles v. United States*, supra.

> In Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the Supreme Court held "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." In Alleyne, 133 S.Ct. at 2155, the Supreme Court extended Apprendi and held any fact which increases the mandatory minimum sentence to which a defendant is exposed is an "element" of the crime and must be submitted to the jury.

United States v. Davis, 753 F.3d 1361 (8th Cir. 2014)

It would appear that any enhancement, other than prior sentences, would have to be submitted to a jury and "proved beyond a reasonable doubt".  However, the Eighth Circuit has refined the *Alleyne* and *Apprendi* decisions giving more clear guidance.

> Bennett next argues that the district court violated his Sixth Amendment right to a jury trial by applying several enhancements under the advisory sentencing guidelines based on facts that were not found by the jury. We review a constitutional challenge to a sentence de novo. United States v. Bowers, 638 F.3d 616, 620 (8th Cir.2011). Bennett relies primarily on the Supreme Court's recent decision in Alleyne v. United States, —–U.S. —––, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013). However, under Alleyne, the Sixth Amendment permits a district court to rely on facts beyond those found by the jury when the court calculates the applicable advisory sentencing guidelines range and selects a sentence within the statutorily-prescribed range. United States v. Davis, 753 F.3d 1361, 1362 (8th Cir.2014) (per curiam); Alleyne, 133 S.Ct. at 2161 n. 2. Here, the facts found by the district court did not alter the statutory maximum or minimum sentence that Bennett faced. Instead, the district court merely used those facts to calculate the applicable sentencing guidelines range and to exercise its discretion when imposing a sentence within the range prescribed by statute. Thus, the district court did not violate Bennett's Sixth Amendment right to a jury trial.

United States v. Bennett, 765 F.3d 887 (8th Cir. 2014)

### 2.  **Disparity of sentences**

The Fourth Circuit held in *United States v. Freeman,* No. 91-4104, 2021, WL 1180711 (4th Cir. Mar.30, 2021), the defendant's sentence was substantially unreasonable based on the disparity between the defendant's sentence and that of similarly situated defendants, as evidenced by data from the Commission's 2018 *Sourcebook of Federal Sentencing Statistics.*  Briggs makes that same argument here.  Research has failed to produce any results that the Eighth Circuit has ruled on this issue.  While this doesn't affect the proper Guideline range, it does affect any sentence that might be assessed.

Exhibit 1, attached to this Memo, taken from *U.S. Sentencing Commission, Preliminary 2021 Datafile, USSCFY21* (October 1, 2020, through March 31, 2021), is an addendum to the

report defining the terms in the Report. Sexual Abuse includes those offenses under § 2G2.1, the section of the Guidelines that Briggs was charged with. See, *(ECF 28, paragraphs 23-26)*. Exhibit 1 also includes Table 6, Sentence Length by Type of Crime, *Id.* Table 6 shows there were 468 cases of sexual abuse in the period reported with a mean sentence of 207 months and median sentence of 180 months. These sentences are well below the Guideline range of 360 months for Briggs, or the authorized statutory maximum of 30 years. Table 10, Sentence Imposed Relative to the Guideline Range by Type of Crime, attached in Exhibit 1, taken from the USSC, *Id.,* shows that only 39.8 percent of the cases were within the guideline range. Table 11, attached as Exhibit 1, Sentence Imposed Relative to the Guideline Range by Primary Sentencing Guideline, shows that out of 221 cases falling in §2G2.1, only 78 were within range. This is very strong evidence that the Guideline range of 360 months is substantially unreasonable based on the disparity between the defendant's sentence and that of similarly situated defendants, as evidenced by the data. The argument also includes that the sentence of 360 months is contrary to §3553(a) of imposing a sentence sufficient, but not greater than necessary.

Exhibit 2 is a *Quick Facts* sheet, *United States Sentencing Commission,* FY 2016 through FY 2020 Datafiles, USSCFY16-USSCFY20, for sexual abuse offenders. Once again, the definition of sexual abuse offenders remains the same, which include §2G2.1. The definition is spelled out in the lower right-hand corner of page 2 of *Quick Facts.* The exhibit is attached in its entirety in order that the Court may view it as a whole rather than piece meal. In essence, the *Quick Facts* sheet states:

99.5% of sexual abuse offenders were sentenced to prison; their average sentence was 201 months.

41.7% of all sexual abuse offenders received a downward variance. Their average sentence reduction was 32.6%.

It seems that there must be an underlying reason for such a large percentage of cases granting variances and with a large percentage downward variance.  It suggests a close in type argument of *(Kimbrough v. U.S., 552 U.S. 85 (2007),* which is listed in Statement of Reasons, Form AO 245B (Rev. 09/19), as a reason to give a variance when sentencing.

Courts of appeals have expanded the rationale of *Kimbrough* to include variances based on policy disagreements with the child pornography, career offender, firearms, offender characteristics, and immigration guidelines.

> *United States v. Dorvee,* 616 F.3d 174, 188 (2d Cir. 2010) (holding that the district court may vary on the basis of disagreement with the child pornography guideline because the Commission did not use an empirical approach based on past sentencing practices in developing that guideline).
> 
> *United States v. Grober,* 624 F.3d 592, 601 (3d Cir. 2010) (a district court may vary on the basis of disagreement with the child pornography guidelines because "the Commission did not do what 'an exercise of its characteristic institutional role' required—develop §2G2.2 based on research and study rather than reacting to changes adopted or directed by Congress.");
> 
> Pappas finally argues that § 2G2.1 should be categorically rejected as a product of congressional mandates rather than the expertise of the sentencing commission. See Troy Stabenow, Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines, 24 Fed. Sent'g Rep. 102 (2011). Even assuming the district court "may disregard the child pornography sentencing guideline on policy grounds," it is "not required to do so." United States v. Black, 670 F.3d 877, 882 (8th Cir.2012). Pappas's challenge to § 2G2.1 is also "not properly made to this court" because on appeal we are "limited to determining the substantive reasonableness of a specific sentence where the advisory guidelines range was determined" in accordance with the guidelines. United States v. Shuler, 598 F.3d 444, 448 (8th Cir.2010).
> 
> United States v. Pappas, 715 F.3d 225, 239 (8th Cir. 2013)

>*U.S. v. Beiermann,* 599 F.Supp.2d 1087 (N.D. Iowa 2009)(imposing 90 months with 10 years supervised release under § 3553(a), rejecting guideline range of 210-262 mos. Resulting from § 2G2.2 child porn guideline on categorical, policy grounds because it did not reflect empirical analysis and impermissibly and illogically skewed sentences for even "average" defendants to the upper end of the statutory range, contrary to the goal of producing a sentence no greater than necessary for just punishment, and on basis of an individualized determination);
>
>*U.S. v. Jacob,* 2009 WL 1849942, *16, *24 (N.D.Iowa June 26, 2009)(rejecting guideline sentence of LIFE and "parties' alternative guideline range" of 292-365 months in enticement of minor and transporting child pornography case as excessive and disproportionately harsh compared to defendant's criminal conduct and history, and imposing 151 months w/10 yrs. supervision because §§ 2G2.1, 2G2.2, and § 4B1.5 enhancement for "pattern of activity involving sexual conduct" improperly skews sentences upward, without regard to defendant's history and characteristics, specific conduct or degree of culpability, blurring distinctions between least and worst offenders and they do not reflect empirical analysis but congressional mandates that undermined work of Sentencing Comm'n. and due to defendant's immaturity, lack of judgment, social isolation, no significant criminal history or history of sex offenses involving children, no serious risk of predatory sexual violence, and his extensive support from friends and family);

Briggs makes the argument that even though the guideline range is 360 months, the rational of *Kimbrough* should be applied and he be granted a substantial downward variance, and based on empirical data supplied by the U.S. Sentencing Commission, a guideline range sentence would be disparate to similarly situated defendants as evidenced by the above cited facts, contrary to the §3553(a) factor of sentences to be sufficient but not greater than necessary. Specifically, Briggs argues that the reasoning in *Jacob, Id.,* applies. The enhancements of §§ 2G2.1 and 4B1.5 improperly skews sentences upward, without regard to defendant's history and characteristics, specific conduct or degree of culpability, blurring distinctions between least and worst offenders and they do not reflect empirical analysis but congressional mandates that undermined work of Sentencing Comm'n."

Briggs did not distribute the images, there were not multiple images, it did not involve multiple victims, and involved someone he had a relationship, albeit, an illegal one. It is closer in kind to statutory rape, which had an average sentence of 46 months. (See, *Quick Facts,* attached as Exhibit 2).

3. **§5G1.3 and §3585 and time spent in state custody**

Briggs has been in state custody since October 10, 2019 on the same charges that forms the basis of his indictment in federal court, and this instant case. He has been in federal custody since October 26, 2020. Below are the relevant portions of sentences that would pertain to Briggs.

§ 3585. CALCULATION OF A TERM OF IMPRISONMENT

(a) COMMENCEMENT OF SENTENCE A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

(b) CREDIT FOR PRIOR CUSTODY A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—

(1) as a result of the offense for which the sentence was imposed; or

(2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

that has not been credited against another sentence.

(Added Pub.L. 98–473, Title II, § 212(a)(2), Oct. 12, 1984, 98 Stat. 2001.)

§5G1.3

4. **Application of Subsection (d).—**

(**E**) **Downward Departure.** —Unlike subsection (b), subsection (d) does not authorize an adjustment of the sentence for the instant offense for a period of imprisonment already served on the undischarged term of imprisonment.

To avoid confusion with the Bureau of Prisons' exclusive authority provided under 18 U.S.C. § 3585(b) to grant credit for time served under certain circumstances, the Commission recommends that any downward departure under this application note be clearly stated on the Judgment in a Criminal Case Order as a downward departure pursuant to §5G1.3(d), rather than as a credit for time served.

It appears that 18 U.S.C. §3585 is controlling in this case. Briggs doesn't have an undischarged sentence neither did he serve time for relevant conduct or have an anticipated sentence that is partially or totally relevant conduct to the instant offense. He does have over a year in custody that is for the same conduct as the federal case. This is an issue that must be resolved at sentencing.

Briggs seeks to have the Court decide as to how he will be given credit for the time he has served.

THEREFORE, for the above reasons, it is respectfully requested that Briggs be given departures and/or variances as argued above. Briggs respectfully requests that he be sentenced to the mandatory minimum sentence of 180 months.

Respectfully submitted,

By:/s/ Ben Hooten_____
    Benjamin D. Hooten, Ark Bar#01265
    HOOTEN LAW
    P.O. Box 21387
    615 West Grand Avenue, Ste. 2B
    Hot Springs, AR 71903-1387
    Phone:     501-318-2400
    Facsimile:  501-318-2401
    benhooten@yahoo.com

## **CERTIFICATE OF SERVICE**

I, Benjamin Hooten, hereby certify that on July 16, 2021, I electronically filed the foregoing with the Clerk of the Court using CM/ECF System which will send notification of such filing and that a copy of the foregoing was also sent via email to the following:

Kyra Jenner, Assistant U.S. Attorney, kyra.jenner@usdoj.gov

Tammy Albritton, Sentencing Guidelines Specialist, Tammy_Albritton@arwp.uscourts.gov

<div style="margin-left: 40%;">
/s/ Benjamin D. Hooten<br>
Benjamin D. Hooten<br>
Attorney at Law
</div>